*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re STEPHENSON, Minors.

UNPUBLISHED
December 14, 2023

No. 366223
Calhoun Circuit Court
Family Division
LC No. 2004-002952-NA

Before: REDFORD, P.J., and SHAPIRO and YATES, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights under MCL 712A.19b(3)(c)(*i*) and MCL 712A.19b(3)(j). We affirm.

## I. FACTUAL BACKGROUND

Calhoun County Department of Health and Human Services (DHHS) petitioned for the termination of respondent's parental rights to three children during 2021 related to physical neglect and improper supervision of the children. Respondent admitted to methamphetamine use and addiction; however, she refused substance-abuse treatment and more often than not failed to submit to drug screens. The trial court ordered that the children be placed in temporary foster care and ordered respondent to participate in various services to enable reunification with the children. The children were removed from respondent's care on February 1, 2022. The children were diagnosed with generalized tooth decay in multiple areas of the primary and permanent teeth and required significant dental treatment. Over the course of the proceedings, respondent had psychological evaluations scheduled that she failed to complete and she took minimal steps toward substance-abuse treatment and failed to complete the program and services made available to her. Respondent was provided parenting time but missed a substantial number of visits. DHHS filed a supplemental petition in January 2023 seeking termination of respondent's parental rights. At the conclusion of the termination proceedings, the trial court terminated respondent's parental rights. Respondent now appeals.

## II. ADJOURNMENT AND/OR INEFFECTIVE ASSISTANCE OF COUNSEL

A trial court's decision to grant or deny a respondent's motion for an adjournment is reviewed for an abuse of discretion. *In re Jackson*, 199 Mich App 22, 28; 501 NW2d 182 (1993).

A trial court abuses its discretion when its decision falls outside the range of principled outcomes. *In re Jones*, 286 Mich App 126, 130; 777 NW2d 728 (2009).

A claim of ineffective assistance of counsel generally presents a mixed question of fact and constitutional law, with questions of fact reviewed for clear error and questions of law reviewed de novo. *In re Mota*, 334 Mich App 300, 318; 964 NW2d 881 (2020). Respondents in parental-rights proceedings are entitled to the effective assistance of counsel, and claims regarding ineffectiveness are reviewed under the same principles that apply in criminal proceedings. *In re Martin*, 316 Mich App 73, 85; 896 NW2d 452 (2016). "Clear error exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *People v Anderson*, 284 Mich App 11, 13; 772 NW2d 792 (2009) (quotation marks and citation omitted). We review de novo whether a particular act or omission fell below an objective standard of reasonableness under prevailing professional norms and prejudiced the defendant. *Id*. at 19-20. Because respondent did not move in the trial court for a new trial or an evidentiary hearing on this matter, our review is limited to mistakes apparent on the existing record. *In re AMB*, 248 Mich App 144, 231-232; 640 NW2d 262 (2001).

## A. ADJOURNMENT

Respondent argues that the trial court erred by denying her request to adjourn the termination hearing to have the opportunity to consult and present an expert witness regarding respondent's positive drug screen. A trial court's decision to grant or deny a respondent's motion for adjournment is largely controlled by MCR 3.923(G), which provides as follows:

> Adjournments of trials or hearings in child protective proceedings should be granted only
>
> (1)  for good cause,
>
> (2)  after taking into consideration the best interests of the child, and
>
> (3)  for as short a period of time as necessary.

This Court has determined "that in order for a trial court to find good cause for an adjournment, 'a legally sufficient or substantial reason' must first be shown." *In re Utrera*, 281 Mich App 1, 11; 761 NW2d 253 (2008) (citation omitted). In a child-protective proceeding, a motion to adjourn must identify a good cause, and the court's ruling should consider the child's best interests. MCR 3.923(G)(1), (2). The court rules applicable to other types of proceedings specify that the unavailability of a witness or evidence may amount to good cause, but "only if the court finds that the evidence is material and that diligent efforts have been made to produce the witness or evidence." MCR 2.503(C)(1), (2).

Applying MCR 3.923(G) to the facts of this case, the trial court did not abuse its discretion by denying respondent's motion to adjourn the termination hearing. Respondent, through counsel, moved for an adjournment at the conclusion of day three of the termination proceedings. According to trial counsel, the adjournment was necessary to refute testimony presented for the first time regarding the credibility of respondent's exposure to methamphetamine during the cleaning of her residence. The record reveals, however, that respondent and trial counsel were

-2-

aware and had proper notice of the positive drug screen approximately 14 days before the termination hearing and that respondent contested that positive drug screen. Additional testimony was presented regarding respondent's immediate reaction to the positive drug screen and her claim that it was a false positive. Evidence was presented that respondent informed her caseworker that it was a false-positive result before the termination proceedings and that respondent had provided at least two factual situations that she argued were the cause of the false-positive result. Respondent argues, on appeal, that evidence regarding skin exposure to methamphetamine was introduced for the first time at the termination hearing; however, contact exposure was the entirety of respondent's argument both when she initially discovered the positive drug result and at the termination hearing. Further, respondent testified at the same termination hearing regarding her cleaning the basement of her residence, lack of protective equipment, and possible contact or ingestion of methamphetamine from failing to wash her hands and shower.

On appeal, respondent argues that research regarding methamphetamine exposure "took a matter of a minute or so to find" and that "any competent professional could have testified on the issue." The trial court did not err by expecting respondent to be prepared with evidence to refute the drug screen that she immediately opposed upon her discovery of the test results. Accordingly, the trial court properly determined that respondent and trial counsel were notified and contested the positive drug screen and could have timely presented evidence to refute the positive drug screen. Therefore, the trial court did not abuse its discretion by denying respondent's motion for an adjournment of the termination proceedings.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

In analyzing claims of ineffective assistance of counsel at termination hearings, we apply by analogy the principles of ineffective assistance of counsel as they have developed in the criminal law context. *In re Trowbridge*, 155 Mich App 785, 786; 401 NW2d 65 (1986). Both the Michigan and federal Constitutions guarantee the right to the assistance of counsel in criminal cases. Const 1963, art 1, § 20; US Const, Am VI. Given the nature of accusations and consequences in child-protective proceedings, this right has been extended to these civil proceedings. *In re Martin*, 316 Mich App at 85.

If defense counsel provided deficient assistance and the deficient performance prejudiced the defendant's trial, the defendant is entitled to a new trial. *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To successfully establish a claim of ineffective assistance of counsel, a respondent in child-protective proceedings must show "that (1) counsel's performance was deficient, falling below an objective standard of reasonableness, and that (2) the deficient performance prejudiced the respondent." *In re Martin*, 316 Mich App at 85. "To demonstrate prejudice, a party must show the existence of a reasonable probability that, but for counsel's error, the results of the proceeding would have been different, and a reasonable probability is one that is sufficient to undermine confidence in the outcome." *In re Mota*, 334 Mich at 319.

"When reviewing a claim of ineffective assistance of counsel, this Court must be cognizant of, and guard against, the bias of applying 20/20 hindsight to counsel's performance." *In re Casto*, ___ Mich App ___; ___ NW2d ___ (2022) (Docket No. 357656); slip op at 8. "In reviewing counsel's performance, this Court 'must determine whether the strategic choices were made after

less than complete investigation, and any choice is reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.' " *Id.*, quoting *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). There is a "strong presumption that counsel's performance was born out of sound trial strategy." *Trakhtenberg*, 493 Mich at 52. "[T]rial counsel cannot be faulted for failing to raise an objection or motion that would have been futile." *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998).

Respondent argues that trial counsel provided ineffective assistance of counsel by failing to object during the termination hearing to the foster-care caseworker's testimony regarding her conversation with an employee at the drug testing laboratory. The Michigan Rules of Evidence, other than rules respecting privileges, do not apply at the termination hearing, and the trial court is permitted to receive all relevant and material evidence. MCR 3.977(H)(2). The Michigan Rules of Evidence apply to an initial dispositional hearing when the petitioner has asked for termination at the initial disposition, and they apply to a dispositional hearing held on a supplemental petition asserting a ground for termination that is new or different from the offense that led the court to take jurisdiction. See MCR 3.977(E); MCR 3.977(F). For other dispositional hearings, the rules of evidence generally do not apply. MCR 3.973(E); MCR 3.977(H)(2); *In re Sanders*, 495 Mich 394, 406; 852 NW2d 524 (2014). Instead, all relevant and material evidence is admissible and certain evidentiary privileges are abrogated. MCR 3.973(E)(1); MCR 3.973(E)(2). Therefore, hearsay is admissible. *In re Hinson*, 135 Mich App 472, 475; 354 NW2d 794 (1984). Further, the trial court may consider all exhibits and testimony elicited during prior hearings, including exhibits not formally received into evidence at the earlier proceedings. *In re King*, 186 Mich App 458, 465; 465 NW2d 1 (1990). If the court at any time believes that the evidence requires further development, the court may examine a witness, call a witness, or order the production of additional evidence. MCR 3.923(A); *In re VanDalen*, 293 Mich App 120, 137; 809 NW2d 412 (2011). A ground is new or different when the grounds for termination are "unrelated to the basis on which the probate court initially established its jurisdiction over the children." *In re Snyder*, 223 Mich App 85, 90; 566 NW2d 18 (1997).

In this case, petitioner filed a petition in February 2022 alleging, in relevant part, that respondent "neglected or refused to provide proper or necessary support, education, medical, surgical, or other care necessary for the children's health or moral, or . . . subjected the children to a substantial risk of harm to his or her mental well-being" and that respondent's "home or environment . . . is an unfit place for the children to live." The petition also included specific factual allegations, stating, in part, that respondent "admits to continued use of methamphetamine" and that respondent "refused critical treatment." Other allegations included respondent's refusal to participate in drug screens, her most recent uses of methamphetamine, and her regular use and significant addiction to methamphetamine.

In January 2023, petitioner filed a supplemental petition, seeking termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*) and (j). The supplemental petition again alleged, in part, that respondent "neglected or refused to provide proper or necessary support, education, medical, surgical, or other care necessary for the children's health or moral, or . . . subjected the children to a substantial risk of harm to his or her mental well-being" and that respondent's "home or environment . . . is an unfit place for the children to live." The supplemental petition also included additional factual allegations of respondent's drug use occurring after adjudication, including allegations that respondent had not addressed her

methamphetamine abuse, postponed or voluntarily chose not to participate in various treatment programs, and had subsequent positive drug screens for methamphetamine.

At the termination hearing, the foster-care caseworker testified regarding respondent's most recent positive drug screen for methamphetamine and her conversation with an employee of the drug testing laboratory regarding respondent's contention that it was a false-positive drug screen. Trial counsel did not object during the direct examination of the witness but attempted to raise concerns regarding the employee's credibility during his cross-examination with questions regarding the caseworker's knowledge of the employee's training and expertise. The trial court permitted petitioner to introduce hearsay by permitting the caseworker's testimony regarding her conversation with the drug testing laboratory employee. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). However, hearsay is admissible at the dispositional phase of the proceedings unless it relates to issues alleged in a supplemental petition not subject to the prior adjudication. *In re DMK*, 289 Mich App 246, 258; 796 NW2d 129 (2010).

In this case, respondent's methamphetamine use was an ongoing issue since the initiation of the case and throughout all later proceedings. Because these statements were postadjudication with respect to the allegations of the initial petition, the rules of evidence did not apply. Accordingly, the testimony was admissible, and respondent's counsel did not provide ineffective assistance by failing to object to the introduction of admissible testimony. "Counsel is not ineffective for failing to make a futile objection." *In re Archer*, 277 Mich App 71, 84; 744 NW2d 1 (2007).

## C. EXPERT WITNESS

Next, respondent argues that trial counsel provided ineffective assistance by failing to present an expert in substance-abuse toxicology. Respondent maintains that testimony by an expert would have provided an effective challenge to the trustworthiness of the testimony presented regarding the most recent positive drug screen and corroborated respondent's testimony that the drug screen presented a false-positive result.

"An attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). It is presumed that counsel's trial strategy is effective; therefore, a party challenging counsel's trial strategy must present evidence to rebut the presumption of effectiveness. *Id*. On appeal, respondent simply argues that trial counsel should have retained an expert to refute the positive drug screen that the trial court considered, in part, in its determination to terminate respondent's parental rights.

Respondent failed to address that trial counsel requested an adjournment to retain an expert after the testimony regarding the drug screen was presented at the termination hearing and after respondent had provided testimony to rebut the positive drug screen. Further, trial counsel attempted to refute the positive drug screen by presenting evidence that the drug screen could have been a false-positive result through testimony from the foster-care caseworker regarding the low level of the results and regarding the caseworker's knowledge of the lab employee's training and expertise on touch exposure versus ingestion. Additionally, trial counsel elicited testimony regarding respondent's negative drug screens before and after the positive drug screen and

respondent's previous high levels when she admitted to using methamphetamine versus the low levels of the recent test in which she denied using methamphetamine. Trial counsel also elicited testimony from respondent regarding her cleaning process and her detailed experience with the various drug paraphernalia to which she had exposure during her cleaning process.

Respondent failed to present evidence regarding how an expert witness would have effectively refuted the positive drug screen and argues only that an expert may have challenged the trustworthiness of the caseworker's testimony and corroborated respondent's testimony. Respondent provided no evidence or affidavits to establish what expert could have been called or what testimony would have been presented. Instead, respondent only included a reference to a publication that indicated that contamination and exposure of methamphetamine in residential homes was an issue of concern to public health and that there are uncertainties pertaining to exposure and health effects. At most, respondent offered speculation that such an expert may have supported her position. Lacking additional details, we cannot evaluate whether trial counsel's decision not to call an expert was sound strategy or whether any prejudice resulted from the decision.

Even assuming that trial counsel performed deficiently by failing to retain an expert witness, respondent has failed to show prejudice resulting from that deficiency. The evidence in the case supported the termination of respondent's parental rights because respondent's substance abuse was just one of the multiple reasons that the trial court determined that statutory grounds existed for termination of respondent's parental rights and that termination served the children's best interests. The trial court discussed respondent's inability to care for her children and respondent's ongoing issues regarding stability, employment, and unsuitable housing. The trial court discussed respondent's lack of participation in services, the length of time that respondent would need to provide suitable housing for the children, respondent's adult daughter with addiction issues living with her, respondent's mental-health issues, respondent's sporadic employment, and the children's anxiety about returning to respondent's care.

Additionally, the trial court specifically addressed respondent's positive drug screen in its findings. The trial court also stood in the position to make credibility determinations. We give deference to the trial court's special opportunity to judge the credibility of the witnesses. *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989). The trial court did not specifically state that respondent's argument for a false-positive result did not have merit; instead, the trial court addressed how, on the basis of respondent's experience with methamphetamine, the trial court did not believe that respondent would clean her residence and have intentional contact with drug paraphernalia without proper cleaning supplies, including gloves, and without washing her hands or showering after hours of cleaning.

Ultimately, the trial court determined that respondent's argument lacked merit because respondent would or should have known not to put herself in that situation. The trial court referred to respondent's past attempts to conceal her methamphetamine use and respondent's failure to provide proof that respondent claimed to have from her counseling agency regarding a conversation with her counselor regarding her new prescription medications. The trial court did not specifically indicate that respondent's argument that contact with methamphetamine while cleaning did not have merit; instead, the trial court determined that respondent's version of events was not credible and constituted a "last ditch effort" to conceal her recent drug use.

Accordingly, respondent failed to establish that she was prejudiced and that the outcome of the proceedings would have been different had trial counsel retained an expert witness at the termination proceedings. Therefore, respondent failed to establish the claim that her trial counsel provided ineffective assistance.

## III. TERMINATION OF PARENTAL RIGHTS

We review "for clear error both the court's decision that a ground for termination has been proven by clear and convincing evidence and . . . the court's decision regarding the child's best interest." *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013).

## A. STATUTORY GROUNDS

The trial court terminated respondent's parental rights under MCL 712A.19b(3)(c)(*i*) (the conditions that led to adjudication continue to exist and there is no reasonable likelihood that they will be rectified within a reasonable time) and (j) (a reasonable likelihood exists that the children will be harmed if returned to the home of the parent). Respondent argues that the trial court erred because clear and convincing evidence did not support termination. We disagree.

Under MCL 712A.19b(3)(c)(*i*), the court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, that the conditions that led to the adjudication continued to exist and that there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age. The trial court entered an initial dispositional order in March 2022. The termination hearing concluded in May 2023. More than 182 days elapsed since the issuance of an initial dispositional order. MCL 712A.19b(3)(c).

According to the petition and respondent's dispositional hearing, the conditions that led to adjudication were respondent's ongoing addiction to methamphetamine, positive drug screens for methamphetamine, respondent's refusal of treatment, and respondent's unemployment and inability to support and care for the children. At the termination hearing, the trial court specified that the conditions that led to respondent's adjudication were respondent's inability to care for her children, her methamphetamine addiction, her refusal of treatment, and the need for stability and employment.

Regarding respondent's methamphetamine addiction and refusal of treatment, evidence established that respondent had struggled with substance-abuse issues for years and that respondent's struggles impacted respondent's adult daughter and possibly contributed to her addiction issues. Evidence established that respondent had not participated in services including: missed psychological evaluation appointments, which ultimately delayed additional services; parenting education program referrals, parenting education, which respondent was discharged from because of missed visitations; two missed interview intakes for the Women's Life Recovery Program (WLRP), voluntarily choosing to stop Summit Pointe counseling treatment after two appointments; and failing to complete required attendance of Alcoholics Anonymous or Narcotics Anonymous meetings. The trial court specifically addressed that, if respondent would have

-7-

utilized the WLRP, she would have had suitable housing and her children returned to her during the program; however, respondent decided on her own that the program would not be good for her. Evidence also established that several early drug screens were positive for methamphetamine and a more recent drug screen obtained during a break of the termination proceedings reported a positive result for methamphetamine use.

Regarding employment, evidence established that respondent had been employed for a week in January 2023 but she quit because she felt that the job was not a good fit for her. Evidence showed that respondent participated in "curbing," which involved respondent collecting materials that individuals put by the road and then selling or trading the items as a source of income. Respondent's probation officer indicated that respondent had not obtained steady employment and that respondent had failed to make any payments on her probation fines. Respondent testified that she planned to develop a cleaning business when her schedule slowed down, hoping that it would be a steady source of income eventually. Evidence was presented at the last termination hearing that respondent had obtained a first-shift job; however, respondent never provided verification of her employment. Evidence indicated that respondent had not had to pay rent and lived rent-free at a home for which she had a pending agreement to purchase for $25,000.

Clear and convincing evidence established that respondent's employment and ability to financially support her children and support respondent's own basic needs remained unstable. Respondent held employment only short in duration, had significant gaps of unemployment, and she remained extremely inconsistent in maintaining employment. Moreover, respondent's caseworker never received verification that respondent was employed by the last termination proceeding.

The record in this case supports the trial court's determination that clear and convincing evidence established respondent's unresolved and ongoing issues with substance abuse, refusal to participate in treatment, and ongoing inability to financially support her children as of the time of the termination hearing. Accordingly, the trial court did not err in finding that a statutory ground existed under MCL 712A.19b(3)(c)(*i*) for termination of respondent's parental rights to the children.[1]

## B. BEST INTERESTS

"[W]hether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence." *In re Moss*, 301 Mich App at 90. "[T]he focus at the best-interest stage" is on the children, not the parent. *Id*. at 87. The trial court should weigh all the evidence available to it in determining the child's best interests. *In re Trejo*, 462 Mich at 356-357.

---

[1] Termination of parental rights needs only to be supported by a single statutory ground. *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009). Therefore, we need not address the trial court's additional findings under MCL 712A.19b(3)(j). Regardless, having reviewed the record, we conclude that the trial court did not clearly err by finding that clear and convincing evidence established that a reasonable likelihood existed, based on respondent's lack of parenting skills, failure to abide by the case service plan, and her struggles with stability and sobriety, that the children would be harmed if they were returned to respondent's home.

The trial court may consider factors including "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). This Court has also considered the length of time the child was placed in foster care or with relatives and whether it was likely "that the child could be returned to her parents' home within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012). To determine whether termination of parental rights is in a child's best interests, this Court may consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. *In re White*, 303 Mich App 701, 715; 846 NW2d 61 (2014).

Addressing the best-interest factors, the trial court found that the children shared a close relationship and strong bond with respondent. The trial court, however, noted that the children exhibited significant anxiety because of severe nightmares about being returned to respondent's care. The trial court considered the evidence presented by the children's counselors regarding the children's self-harm and emotional struggles throughout the case proceedings and that respondent had not yet established a proper and consistent home for the children. The trial court also noted the petitions and state intervention and how respondent failed to address her issues, including substance abuse, that gave rise to early state intervention. The trial court also indicated that the children were thriving and doing very well in their preadoptive placement.

Evidence established that respondent shared a close bond with the children and that she loved them. Respondent struggled to attend all parenting visits early in the case; however, her attendance improved and she did not miss a visitation from November 2022 to the termination of her parental rights. Respondent actively participated in the visits by playing activities with the children and bringing snacks for the children. The record reflects that the children were slow to leave, did not want to end their visitations with respondent, and that visitations went very well.

However, the trial court was also presented with evidence that respondent missed 24 visitations and only began to comply with the visitation schedule once the goal changed from reunification to adoption. Evidence established that the children had significant anxiety about being returned to respondent's care and suffered nightmares that they were at respondent's home and had to protect her from intruders. Additionally, the children felt the need to assist respondent financially and offered to sell their artwork for money to put toward obtaining a home. Evidence also established that the children had black and rotted teeth and needed extensive dental treatment including 6 to 10 tooth extractions each to remedy the problems. During the proceedings, respondent failed to consistently attend their dental treatment appointments. Because of respondent's inconsistent involvement, the state sought and obtained an emergency order from the trial court to gain authority to consent to the children's treatment. Later, respondent failed to attend all the follow-up treatment appointments despite being informed of the appointment dates and being offered a gas card to help her attend.

Evidence demonstrated that the children had a close bond with their foster parents and referred to them as "mom" and "dad." Their foster placement expressed willingness to adopt all three children and the children made remarks indicating that they wanted to live with their foster placement forever.

Respondent exhibited a lack of accountability regarding the impact that her way of living had on her children. She testified: "I feel like the foster care system has caused more stress and trauma to my kids than my addiction did," and "I had eight—or 16 investigations when everyone of them knew I was on methamphetamines and still closed out every single investigation because I provided for my kids." Evidence, however, established that the children were adversely impacted by respondent's ongoing struggles.

The record establishes that the children needed stability, permanency, and consistency, and respondent could not provide that. Respondent failed to successfully address her substance-abuse issues, failed to obtain suitable housing, failed to obtain and maintain consistent employment, and failed to gain the ability to support the children. Further, respondent failed to take responsibility for her methamphetamine addiction by failing to follow through with treatment programs.

A preponderance of the evidence supports the trial court's determination that the termination of respondent's parental rights served the children's best interests. See *In re Olive/Metts*, 297 Mich App at 41-42; see also *In re Frey*, 297 Mich App at 248-249. Accordingly, the trial court did not err in terminating respondent's parental rights to the children.

Affirmed.

/s/ James Robert Redford
/s/ Douglas B. Shapiro
/s/ Christopher P. Yates

-10-